Dear Dr. Trail:
This office has received your opinion requests dated July 20, 1998; August 6, 1999; and December 3, 1999 wherein you presented the following issues for our review.
 1) May Charity Hospital in New Orleans, hereafter known as "Charity Hospital", sell property donated to it to be used for the benefit and support of the Charity Hospital?
 2) May Charity Hospital sell property that has been purchased by funds donated to Charity Hospital for its support by private parties?
 3) Can the proceeds be returned to Charity Hospital under La. Const. Art. VII § 9(A) rather than be deposited into the State Treasury?
 4) Does La. Atty. Gen. Op. 95-151 still apply?
 5) Do the procedures set out in La. Revised Statute 41:131 et seq. (more specifically La. Revised Statute 41:140) for the sale of nonessential immovable property apply?
La. Revised Statute 17:1519.1(B) transferred Charity Hospital and Medical Center of Louisiana at New Orleans, including University Hospital to the Board of Supervisors of Louisiana State University, hereafter known as "the Board." La. Revised Statute17:1519.1(D) transfers all "books, papers, records, money, accounts receivable, actions, and all property of every kind, movable and immovable, real and personal, heretofore possessed, controlled, or used" by Charity Hospital or the Louisiana Health Care Authority to the Board "to be used by the health care services division." By virtue of this provision, all property, including that donated to Charity Hospital, is under the control of the Board.
La. Revised Statute 17:1519.3(A)(3) specifically provides as follows:
 (A) The board shall have the following powers and duties, any or all of which it may delegate to the health sciences center or the division:
 (3) To hold title to immovable and movable property, to acquire such property through purchase, gift, lease, construction, or otherwise, and to dispose of such property by sale or lease in accordance with the general laws of the state. However, the sale of any immovable property on which a hospital is located, the lease of an entire hospital facility to any entity other than another state agency, or the sale of an entire hospital facility shall be subject to approval by the legislature. The proceeds from any such sale or lease shall be dedicated to the improvement of other facilities of the division for the betterment of patient care. The authority provided in this Paragraph shall be in addition to the powers granted under the provisions of R.S. 46:1074.
In response to your question, based upon our analysis of these provisions, it is our opinion that the Board may sell properties formerly held by Charity Hospital now held by the Board, whether title to said properties was acquired by donation or purchase utilizing donated funds. As provided in the statute, the proceeds from any such sale shall be dedicated to the improvement of other facilities of the division for the betterment of patient care.
Your next question regards the disposition of the proceeds from the sale of Board property, specifically, whether the proceeds may be returned to the Board, or rather deposited into the state treasury. Our review of the terms and conditions of the various acts of donation involving these numerous parcels of property confirms that the intention of each donor was that the property was donated with the intention of enhancing Charity Hospital's ability to provide healthcare to the metropolitan New Orleans area.
La. Const. Art. VII Section 9(A)(1) provides as follows:
 Section 9 (A) Deposit in State Treasury. All money received by the state or by any state board, agency, or commission shall be deposited immediately upon receipt in the state treasury, except that received:
 (1) As a result of grants or donations or other forms of assistance when the terms and conditions thereof or of agreements pertaining thereto require otherwise.
As previously noted, R.S. 17:1519.3(A)(3), specifically allows the Board to hold title to immovable property acquired by gift and to dispose of such property by sale or lease in performing its functions. It is also worth noting that La. Revised Statute49:308(E)(2)(d) expressly exempts the Board from its definition of "State or state board, agency, or commission. Based on the relevant facts and law, it is our opinion that the proceeds derived from the sale of the aforementioned properties fall within the exception of La. Const. Art. VII Section 9(A)(1).
As far as the continued validity of Opinion No. 95-151 is concerned, Act 3 of the 1997 Regular Session abolished the Louisiana Health Care Authority and, among other things, transferred public hospitals and their funds, property, records, obligations, functions, and employees from the Louisiana Health Care Authority to the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College. The opinions issued by our office are done so on a case by case basis, taking into account the analysis of the relevant facts and law. Opinion No. 95-151 was issued in light of the law and the facts as they existed at that time. We are employing the same methodology here. Opinion No. 95-151 is still in force as it pertains to the issues addressed therein.
La. R.S. 41:140 provides for the sale of immovable property by state agencies. While the Board was expressly exempted from the definition of "state agency" for the purposes of R.S.49:308(E)(2)(d), for the purposes of R.S. 41:120, the definition found in R.S. 39:321(A) applies and a plain reading would readily include the Board as a "state agency" for the purposes of sales of immovable property. Therefore, it is our opinion that the Board is subject to the procedural control of La. Revised Statute 41:140
for the sale of Charity Hospital's immovable property.
Should you have any further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 ______________________________ Emory A. Belton, Jr. Assistant Attorney General
RPI/EAB/tp